IRVING, J.,
dissenting in part and concurring in part:
¶ 53. The Mississippi Department of Agriculture and Commerce (the Department) found that John P. Slay d/b/a Slay’s Processing Plant committed six violations of Mississippi Meat Inspection Laws and Regulations. Upon an appeal by Slay to the Circuit Court of Clarke County, the findings of the Department were affirmed. In a further appeal to this Court, the majority has determined that only four of the findings of the Department should be affirmed. Because I believe the findings of the Department should be affirmed in toto, I respectfully dissent as to parts 1(a) and 1(d) of the majority opinion.
¶ 54. I believe Section II B of Mississippi Meat Inspection Laws, Rules and *1269 Regulations, coupled with Slay’s father’s 1960 application and renewal application, makes it exceedingly clear that Slay knew he was not licensed to slaughter beef. By any reasonable interpretation of his application, it was an application to slaughter hogs only. Section II B of the regulations says, “No establishment shall be used for any other purpose than that for which it is specifically approved.” I cannot imagine that one can make an application for a license to slaughter only hogs and think that the granting license has given permission to slaughter hogs and beef simply because the license does not specifically say “this license is for the slaughtering of hogs only.”
¶ 55. Line ten of the original Slay application, which was made under the Meat, Meat-Food and Poultry Regulation and Inspection Act of 1960, reads as follows: “Describe completely and concisely the business carried on.” This is the typed answer to the request: “We raise and process hogs on this farm in the winter months. The hogs are raised, the feed raised on the farm and then processed and sold wholesale.”
¶56. Line eleven of the application reads: “List finished products.” The typed response to this directive is: “Smoked and fresh sausage and other products.”
¶ 57. The pertinent part of Slay’s license reads:
Pursuant to the Meat, MeaiAFood and Poultry Regulation and Inspection Law of 1960, and in accordance with regulations promulgated thereunder Slay Processing Plant is hereby authorized to engage in the processing of Meat and MeaL-Food products under Laws and Regulations of the State of Mississippi.
¶ 58. I do not understand how the majority can essentially conclude that Slay was deprived of due process because he was not on clear notice that he was not approved for slaughtering beef. How could Slay think he was approved for anything not sought in his application. The fact that Slay had slaughtered beef before and had not been called on the carpet about it before lends some credence to the majority’s view, but I do not think this fact is sufficient to justify the conclusion that he thought his license granted him the authority to slaughter beef. I arrive at this position because the report showing that he slaughtered beef was for the period November 11, 1996, through March 15, 1997. This was only approximately a year prior to the violations in question. This plant had been in operation since approximately 1940. If there had been reports showing that beef had been slaughtered since its inception, I could understand the majority’s reasoning. I do not believe the failure of the Department of Agriculture and Commerce to catch the violation on that one quarterly report justifies the conclusion that the Department had approved the slaughter of beef at this establishment or that Slay was confused about what his license allowed.
¶ 59. In part 1(d), the majority concludes that Slay was not asked a specific enough question to find that Slay knowingly falsely represented that the carcass had been inspected and passed or exempted under the Meat Inspection Law of 1968 when in fact it had not been so inspected and passed or exempted. I would agree with the majority’s reasoning if Slay had been charged under Mississippi Code Annotated § 97-9-59 (Rev.2000) with perjury rather than under Mississippi Code Annotated § 75-35-23(2)® with knowingly representing that the carcass had been inspected and passed when it had not. The evidence is certainly too weak to sustain a perjury charge. However, we are not dealing with a perjury charge.
¶ 60. Sections 75-35-7 and 75-35-9 make it clear that both ante-mortem and *1270 post-mortem inspections are required. Therefore, I believe that when Slay said to Meadows that “Creel inspected those animals,” he was representing that the inspections required by the aforementioned code sections were done by Creel. In this regard, I point out that the Meat Inspection Law of 1968 defines the term “official inspection legend” as “any symbol prescribed by regulations of the commissioner showing that an item or product was inspected and passed in accordance with the Meat Inspection Law.” Miss.Code Ann. § 75-35-3 (Rev.2000). As stated, code sections 75-35-7 and 75-35-9 require both inspections. Therefore, when a meat processor represents that an inspection has been done, he is representing that the inspection has been done in accordance with the Meat Inspection Law which requires two, not one inspection. Hence, when Slay said that Creel inspected the carcass, he was representing that Creel did two inspections. This was a misrepresentation of fact. For the reasons presented, I respectfully dissent.
KING, P.J., BRIDGES and CHANDLER, J.J., JOIN THIS SEPARATE OPINION.